That brings us to our last argument of the morning in Appeal No. 24-1590, Cain v. Colvin. Morning, Mr. Farr. Morning. Apologies. May it please the Court. I believe that in this case the ALJ committed three reversible errors. But before I get to that point, I want to emphasize that the ALJ did recognize that there were significant limitations that Mr. Cain had and limited him to a sedentary residual functional capacity. I think that influences how we should read the rest of the decision because the judge was clearly not viewing this person as somebody who is basically normal. If you can just do a reduced range of sedentary work, you're not somebody who would expect to see normal results throughout the record, not really limited in any way. So my first issue is that the ALJ did not logically explain his rejection of a physical therapist's opinion. Ms. Turner gave clinical findings supportive of many of her limitations and most significantly to standing, walking, lifting, and carrying. Her opinion is also consistent with the findings of reduced strength that the ALJ acknowledged in the rest of the record. The ALJ said that the record was otherwise normal, but if that were true, then it wouldn't make sense for him to arrive at the sedentary residual functional capacity. There seems to be a logical gap between his conclusion that this person is seriously limited and yet his belief that serious limitations on a functional capacity evaluation are somehow erroneous because he's really not all that limited. Ms. Turner's sitting limitations are in contrast to the standing, walking, lifting, and carrying based on subjective complaints made by the claimant. But those complaints are consistent with the MRI showing effacement of the fecal sac and neural formant. And while I'm not a doctor or any sort of medical expert, my understanding is that this is an erosion of the actual spinal cord where it's pressing in on the spinal cord, which my understanding of the medical literature is this would be consistent with causing back pain when you're sitting down. So it's not as though the subjective complaint of sitting issues emerges out of nowhere. That leads to something that I think is, at least to me, a bit confused currently with the status of the case law, which is whether subjective complaints should be outright rejected by an ALJ or whether they can be considered. And the reason I say this is that the ALJ said that, well, because these sitting limitations and other limitations are subjective in nature, I can discount them. Can I pause you on that?  Can you be more specific? What in our case law is confused or out of whack on this point? So that's exactly where I was going to lead to, Your Honor. So we have cases like Adair v. Colvin, Price v. Colvin, Mulser v. Colvin, and Thompson v. Berryhill, where they're saying subjective claims are not automatically suspect, and doctors must start with a consideration of the claimant's subjective experience when they're evaluating a patient. Then we have a case like Prill, which says that an ALJ can discount an opinion based on subjective complaints. And just last month, Kasson v. O'Malley likewise said that an ALJ can discount based on subjective complaints. So if some cases are saying you can't just automatically reject because it's subjective, but in these other cases the ALJ's reasoning is, well, they're subjective, so I'm rejecting them, I don't know how to connect the gap between these cases. Does that address your question? Yeah, we'll look at it. I was of a mind that our law was fairly clear on this, in that subjective is just the Social Security jargon for the applicant's own account of her, his, often daily activities and limitations. Yes. And as I sit here, I'm not aware of any precedent that tells us to disregard it because it's coming from an applicant. What I am aware of is it is not entitled to dispositive weight, it's not controlling, and it should be considered in light of the totality of what the remainder of the record shows, including the medical evidence on mental or physical impairment. I agree. But the problem here is that the judge used the fact that it was subjective to discount a medical opinion. So it's not evaluating how strong are those complaints. Where do you see that? Where do you see that in the ALJ's opinion? Is that more you reading between the lines? I don't recall anything anywhere near that. I'm sorry, I'm flipping to that right now. Yeah, that's all right. Maybe you can come back on rebuttal on that if you want. No, that's okay. I don't want you to burn your time on it. I'm on A15. And so it says this opinion, it's about the middle of the paragraph. This opinion does not appear to be supported directly by any positive clinical findings, but rather relies heavily on the claimant's subjective reports. I see it. Okay. So half of that statement doesn't make sense because there are objective clinical findings, and the judge is acknowledging that elsewhere in the record there's reduced strength, which seems consistent with this report. And then the other half of the statement is specifically suggesting that, well, they're relying upon the subjective complaints. That's wrong somehow. I don't know how else to read that sentence without going into explaining why the physical therapist should not have considered subjective complaints, or even though the physical therapist could consider them why it was inappropriate in this context. I mean, that sentence presumably has some meaning. So in my perspective, if we're talking about in the context of evaluating this medical opinion, I don't think it's particularly relevant whether or not subjective complaints were a starting point for the physical therapist, because you have to start somewhere with what the individual says. So is there objective evidence connecting to that? Well, we know there's objective evidence showing issues with standing and walking, and that there are postural issues, and that this person is obese. And we know that there's an MRI that shows that this person has a lumbar issue that would resultantly cause issues with sitting, for many people. Not all the time. I'm sure there are people who could have effacement of the lumbar spine. Maybe they don't have that same exact complaint, because pain is pretty subjective as it is. But I don't think that this is a case where we're just looking at subjective complaint without any sort of underlying objective evidence to tie to it. So using that as a suggestion that, well, the physical therapist considers subjective complaints, this is somehow a weakness, is problematic. But I do want to move on from that issue to the second issue, which is about the state agency psychologist's opinions. So the state agency psychologists ultimately found four areas of moderate limitations. And their narrative was suggestive of somebody who could do some semi-skilled or detailed tasks. They had some different social limitations. What's especially concerning for me is really that the first consultant found issues with maintaining attention or concentration, and the second consultant actually added to that and said completing a normal work day or work week and performing at a consistent pace would also be impacted. But then we don't really see that reflected in the narrative. And so the judge did not have to adopt that opinion. Perhaps the judge could have said, well, actually, this doesn't make a lot of sense. Maybe I want to send this back, get the consultants to clarify what they want to do. Maybe I'm going to say, well, this logically doesn't add up, so I'm going to reject the opinion. But if the judge is going to say that this opinion is persuasive, then he should either account for those concentration and persistence issues or he should explain why he's excluding them. But to the extent that he addresses this issue at all, it's just to note that the claimant can complete tasks, which I don't believe Jonathan has ever claimed that he cannot complete a task. So on that issue, it's less about, oh, does the judge have to adopt those opinions? Does the judge have to do anything? He just needs to explain himself, and he didn't right now. The third issue is relating to VE methodology, and I think this might be the most straightforward issue for me, which is just that a vocational expert has to provide enough evidence that the judge can rely on at Step 5 to show there are significant numbers of jobs. The ALJ has the burden at that step, and this vocational expert, when asked what your methodology is, it was professional experience. What's your professional experience? I've seen people. Well, was the issue preserved? I mean, we have quite a bit of case law that says, look, you've got to object. So I would read actually the same case cited by the appellees here, and that's in Lyskane, where it's saying that the ALJ still has the burden at Step 5 and cannot accept facially implausible or incoherent testimony. Additionally, even though I didn't specifically say I object to this, I did question it. The vocational expert then said, well, I don't actually place any people in these jobs. There's no connection to, well, how do you get those numbers? And then I did raise this issue on appeal to the Appeals Council, so it wasn't a matter of first impression going into the district court. I specifically noted that the ALJ relied on insufficient testimony to show significant job numbers. So I guess I've exhausted my time, but I think any further questions before? Not hearing any. Thank you. OK, let's hear from Ms. Johnson. Good morning, Your Honors, and may it please the Court. I'm Nicole Johnson representing the Acting Commissioner of the Social Security Administration. So at issue here is the ALJ's analysis of both the medical opinion evidence and the vocational expert testimony. I'm going to take each of these in turn and explain why they are reasonable and well supported by the record. So turning first to the medical opinion evidence, the ALJ reasonably and very thoroughly evaluated the persuasiveness of the medical opinion evidence in this case. And as the Seventh Circuit has repeatedly explained, the regulation's articulation requirement is minimal. And given the ALJ's careful analysis of the opinions in this case, appellant's argument that no reasonable mind could accept the ALJ's conclusions should be rejected. So I'm going to turn first to the physical therapist's opinion, Ms. Mahan-Turner. This opinion included multiple functional limitations that were not supported by or consistent with the medical record. The ALJ reasonably concluded that it was not persuasive, and he more than minimally articulated his reasons for that. For example, he reasonably rejected Ms. Mahan-Turner's sitting limitations, explaining that they were not supported by her own examination findings and they were inconsistent with the other medical evidence, including other examinations, which included full range of motion in the back, full arm and leg strength, negative straight leg breast testing, and normal muscle tone and strength. So the ALJ also found that Ms. Mahan-Turner's opinion regarding shifting positions at will was not consistent with the evidence showing no significant problems with sitting for prolonged periods. Now, the appellant himself conceded in his brief that at least some of Ms. Mahan-Turner's opinion clearly lacked support from her own examination or appeared to be internally inconsistent and contradicted. For example, according to the appellant, there was no evidence to support a limitation on the appellant's ability to move his head. There was no clear support for the limitations related to absences or the need to take frequent or unscheduled breaks. And there was no support for the conclusion that the appellant would be constantly distracted from any simple work tasks. And therefore, the appellant has not shown that no reasonable mind could accept the ALJ's conclusions. But although the ALJ found the overall opinion unpersuasive, he did accommodate the limitations that had more support in the record in the appellant's RFC and concluded that the appellant was limited to a significantly restricted range of sedentary work. Turning to the prior administrative medical findings from Drs. Larson and Loveco, here the ALJ also more than satisfied the minimal articulation requirements. Both Drs. Larson and Loveco completed the mental residual functional capacity questions in the first part of the prior administrative medical findings and then, based on those answers, provided narrative opinions about the appellant's functional limitations. Now, the ALJ found these opinions generally persuasive, but did explain where he found some portions of the opinion inconsistent with the record. And therefore, he formed an RFC assessment based on the entire record and not just their opinions. Furthermore, the ALJ's analysis and RFC finding adequately accommodated both the doctors' answers to the mental residual functional capacity questions and the limitations in their narrative opinions. The answers indicated that the appellant had a moderate limitation, which the regulations define as a fair ability, in multiple areas related to concentration, persistence, or pace. And these were accommodated by the ALJ's finding that the appellant could maintain concentration, persistence, and pace for two-hour periods for simple, routine, and repetitive tasks. Now, the appellant, in his brief, argued that this was no limitation at all because it is the same as the minimum expectation for unskilled work. But being able to maintain only enough concentration sufficient to perform only unskilled or simple, routine, and repetitive tasks, regardless of the length of time the work is performed, is itself a limitation, as there's also semi-skilled and skilled work in the national economy, and there are people who are able to concentrate for longer than two hours at a time or are able to concentrate for two hours on more demanding tasks. So the ALJ substantially supported his analysis here as well. And then finally, I'm going to turn to the vocational expert's testimony. Now, Mr. Dunleavy, the expert, testified that there were at least three jobs an individual with the appellant's residual functional capacity could perform that existed in significant numbers in the national economy. Now, prior to bringing this case to federal court, the appellant's counsel didn't raise an objection to Mr. Dunleavy's experience, the methodology he used, the jobs he identified, the numbers he identified, or any other part of his testimony. So as an initial matter, this argument was forfeited. But even if not forfeited, Mr. Dunleavy supported his testimony with a reasoned explanation that provided substantial evidence to support the ALJ's findings. Now, Mr. Dunleavy testified that he factored in several sources and he identified those sources. He first explained that he looked to the Bureau of Labor Statistics for his initial numbers. Then he factored in county business patterns. Then he looked at the number of establishments that exist in a certain industry that is likely to be employing people with particular DOQC codes. And then he pared that number down further to only full-time positions by using percentages he gets from the Census Bureau. Mr. Dunleavy also testified that he was familiar with the jobs, he had seen them performed, and he had extensive dialogue with other vocational experts on a national level. And this was sufficient for a reasonable mind to conclude that the ALJ's reasoning was supported by the record, particularly given the lack of objection to that testimony at the hearing or in a post-hearing brief. Do your honors have any questions? So for these reasons and the reasons stated in the commissioner's brief, the commissioner requests that the court affirm the ALJ's decision. Thank you. Okay. With thanks to both counsel, we'll take the appeal under advisement. That concludes the day's arguments, and the court will be in recess.